**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JAMIE HEMPHILL PLAINTIFF
ADC # 154075

v. 4:25CV00602-JM-JTK

DEXTER PAYNE, et al. DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

## I. Introduction

Jamie Hemphill ("Plaintiff") is incarcerated at the Cummins Unit of the Arkansas Division of Correction ("ADC"). His claims in this case arise from the time when Plaintiff was in custody at the East Arkansas Regional Unit ("EARU") of the ADC. Plaintiff's Complaint (Doc. No. 2) is the operative pleading in this action. He sued ADC Director Dexter Payne and EARU Warden Todd Ball along with Dr. Gary Kerstein, APN Tracy Bennett, and Health Service Manager Jason Palmer. (Id. at 1). Plaintiff asserts all defendants were deliberately indifferent to his serious medical needs. (Id. at 2-9).

On December 1, 2025, United States District Judge James M. Moody, Jr. dismissed Plaintiff's claims against Dexter Payne and Todd Ball; Payne and Ball have been terminated as parties to this action. (Doc. No. 22). Plaintiff claims against Kerstein, Bennett, and Palmer (collectively, "Defendants") in their personal and official capacities remain pending.

On June 22, 2026, Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's claims, along with a Brief in Support and Statement of Undisputed Material Facts. (Doc. Nos. 27-29). The Court directed Plaintiff to respond to Defendants' Motion by July 23, 2026. (Doc. No. 30). The Court advised Plaintiff that failure to comply with the Order would result in the facts set forth in Defendants' summary judgment papers being deemed admitted. (Id.) Plaintiff has not filed a response and the time for doing so has passed.

After careful consideration of the record and for the reasons set out below, the Court recommends that Defendants' Motion be granted.

## II. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.

Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e).

## III. Discussion

### A. Plaintiff's Complaint

On October 23, 2024, Plaintiff was involved in a physical altercation resulting in injury to his right hand and left thumb (Doc. No. 2 at 5). An LPN who is not a party to this action wrapped Plaintiff's right hand in an ACE bandage, made a sling for Plaintiff's left thumb, and ordered an x-ray. (Id.). The x-ray technician did not report to the facility as scheduled on October 28, 2024, so Plaintiff had to wait for x-rays. (Id. at 6). Defendant Kerstein saw Plaintiff on October 30, 2024, and allegedly told Plaintiff he had a severe fracture and was waiting for the x-rays to see if any bones were broken. (Id.).

By November 11, 2024, Plaintiff had not received the results of his x-ray that was administered on November 4, 2024. (Id.). Plaintiff grieved ongoing pain and inflammation. (Id.).

On November 15, 2024, Plaintiff viewed his medical jacket and discovered that the x-ray of his right hand read "obscured." (Doc. No. 2 at 6).

On November 18, 2024, a Wellpath employee asked Plaintiff for the return of the ACE bandage he had been given. (Id.). Two days later, Defendant Bennett saw Plaintiff and informed him that he had no broken bones or fractures. (Id.).

Plaintiff's right hand was x-rayed for a second time on April 25, 2025. (Id. at 8). On May 2, 2025, Defendant Bennett informed Plaintiff that his pinky finger on his right hand was broken. (Id.). Defendant Bennett wrapped Plaintiff's hand with tape and "a homemade sling" and told Plaintiff to keep his finger wrapped for 6-8 weeks. (Id.).

Plaintiff claims that as a result of inadequate medical care, he has suffered loss of sleep, exercise, weight loss, and pain and suffering. (Doc. No. 2 at 8).

**B. The Defendants' Motion**

Defendants submitted the following undisputed facts and undisputed underlying medical records. (Doc. No. 29). Plaintiff has not contested any of the facts or records Defendants deem undisputed. Accordingly, the Court deems these facts admitted. Fed. R. Civ. P. 56(e); Local Rule 56.1.

On October 23, 2024, Katheren Billingsley—not a party to this action—saw Plaintiff for right hand pain while Plaintiff was in a hall cage. (Doc. No. 29 at ¶ 1; Doc. No. 29-1; Doc. No. 29-2). Billingsley noted that Plaintiff's right hand was swollen. (Doc. No. 29 at ¶ 1; Doc. No. 29-1; Doc. No. 29-2). She consulted with Defendant Bennett who ordered a 2-view x-ray, ace bandage, and naproxen and acetaminophen for pain management. (Doc. No. 29 at ¶ 1; Doc. No. 29-1; Doc. No. 29-2).

On October 30, 2024, Defendant Kerstein saw Plaintiff during sick call. (Doc. No. 29 at ¶ 2; Doc. No. 29-3). Defendant Kerstein noted swelling to Plaintiff's right hand and thumb. (Doc. No. 29 at ¶ 2; Doc. No. 29-3). Plaintiff exhibited full range of motion. (Doc. No. 29 at ¶ 2; Doc. No. 29-3). Defendant Kerstein ordered continuation of treatment and a follow-up after completion of an x ray. (Doc. No. 29 at ¶ 2; Doc. No. 29-3).

During sick call on November 2, 2024, Plaintiff reported excruciating pain in his right hand and left thumb and that acetaminophen was ineffective. (Doc. No. 29 at ¶ 3; Doc. No. 29-4). The record of the encounter reflects "[p]ain consisted with hand and thumbs to be broken as well as inflamed." (Doc. No. 29-4 at 1). Billingsley noted "[s]welling . . . to patient's right and and left thumb, patient has pain with [range of motion] and decreased [range of motion], patient right hand and left thumb appears to be broken." (Id.). Defendant Bennett ordered naproxen and an ace wrap. (Doc. No. 29 at ¶ 3; Doc. No. 29-4).

A November 5, 2024, x-ray revealed no displaced fracture. (Doc. No. 29 at ¶ 4; Doc. No. 29-5). More specifically, the x-ray ordered was for 2 views to the right hand. (Doc. No. 29-5 at 1). The x-ray findings provide: "Single oblique, single lateral only right hand. No prior studies. Study obscured by bandaging artifact. No AP view. Fracture not excluded. No displaced fracture presented views. Correlate with unobscured imaging. Impression: Bandaged study. No displaced fracture presented exam." (Id. at 2).

Defendant Bennett reviewed the x-ray results on November 11, 2024, and determined that no follow up was required. (Id. at 3).

On November 17, 2024, Plaintiff presented to Health Services during sick call with complaints of continued pain in his right hand and left thumb. (Doc. No. 29 at ¶ 5; Doc. No. 29-6). Plaintiff communicated that he wanted Defendant Bennett to explain his x-ray results to him

and show her what his hand looks like. (Doc. No. 29-6 at 1). Billingsley examined Plaintiff's right hand and noted "[s]welling and visible deformity . . . to patient's right middle finger knuckle" and pain level of 10 out of 10. (Id.). Billingsley consulted Defendant Kerstein, who continued Plaintiff's prescription for naproxen for pain management and ordered a follow-up visit. (Doc. No. 29 at ¶ 5; Doc. No. 29-6).

Defendant Bennett saw Plaintiff on November 20, 2024, for a follow-up visit. (Doc. No. 29 at ¶ 6; Doc. No. 29-7). Defendant Bennett noted edema and tenderness to Plaintiff's right third finger. (Doc. No. 29 at ¶ 6; Doc. No. 29-7). Defendant Bennett reviewed the x-ray results with Plaintiff and ordered continuation of naproxen for pain. (Doc. No. 29 at ¶ 6; Doc. No. 29-7).

On November 23, 2024, Plaintiff presented to Health Services for sick call with complaints of continued pain in his right hand. (Doc. No. 29 at ¶ 7; Doc. No. 29-8). Plaintiff complained that his right hand was "[s]till painful and extremely uncomfortable, deformed, and cannot make a fist . . . ." (Doc. No. 29-8 at 2). Plaintiff also complained that the naproxen was "not really alleviating pain." (Id.). Billingsley noted swelling to Plaintiff's right hand. (Doc. No. 29 at ¶ 7; Doc. No. 29-8). Plaintiff demonstrated full range of motion with pain. (Doc. No. 29 at ¶ 7; Doc. No. 29-8). Billingsley consulted Defendant Kerstein, who ordered acetaminophen 325mg for pain management. (Doc. No. 29 at ¶ 7; Doc. No. 29-8).

On November 28, 2024, Plaintiff refused a sick call visit. (Doc. No. 29 at ¶ 8; Doc. No. 29-9).

Plaintiff presented to Health Services for a sick call on December 4, 2024, with complaints of continued pain in his right hand. (Doc. No. 29 at ¶ 9; Doc. No. 29-10). Crystal Rivers—not a party to this action—consulted Defendant Bennett, who ordered naproxen for pain management. (Doc. No. 29 at ¶ 9; Doc. No. 29-10).

On December 5, 2024, Plaintiff presented to Health Services with complaints of continued pain in his right hand and left thumb. (Doc. No. 29 at ¶ 10; Doc. No. 29-11). Billingsley noted swelling to Plaintiff's right hand. (Doc. No. 29 at ¶ 10; Doc. No. 29-11). Plaintiff demonstrated full range of motion with pain. (Doc. No. 29 at ¶ 10; Doc. No. 29-11). Billingsley consulted Defendant Kerstein who ordered acetaminophen 325mg for pain management and a follow-up visit. (Doc. No. 29 at ¶ 10; Doc. No. 29-11).

Plaintiff presented to Health Services again on December 10, 2024, with complaints of continued pain in his right hand. (Doc. No. 29 at ¶ 11; Doc. No. 29-12). Plaintiff complained as follows:

> [e]xcruciating pain still exists in my right hand and Tylenol is repeatedly being discontinued after 3 days forcing me to continuously place sick call after APN Tracy Bennett extended meds and verbally told me on 11/20/24 if any further extension of meds on complications with my hand to put in sick call for follow up. Repeatedly discontinuing meds with known injury is cruel.

(Doc. No. 29-12 at 1).

During the December 10 visit, Cassie Holloway—not a party to this action—noted no swelling to the right hand. (Doc. No. 29 at ¶ 11; Doc. No. 29-12). Plaintiff demonstrated full range of motion with pain. (Doc. No. 29 at ¶ 11; Doc. No. 29-12). Holloway consulted Defendant Bennett, who continued Plaintiff's order for naproxen for pain management and ordered a follow-up visit. (Doc. No. 29 at ¶ 11; Doc. No. 29-12).

On December 11, 2024, Plaintiff was seen by Defendant Bennett during a sick call based on Plaintiff's right hand pain. (Doc. No. 29 at ¶ 12; Doc. No. 29-13). Defendant Bennett noted that Plaintiff's right hand was tender at the third metacarpal head, there was minimal soft tissue edema noted, and Plaintiff reported pain with range of motion. (Doc. No. 29-13 at 1). Defendant Bennett reviewed the x-ray, including the radiologist's notes, and found that "there is no area that

is obscured by bandaging. X-ray is very clear." (Id.). Defendant Bennett noted there was no evidence of fracture. (Doc. No. 29 at ¶ 12; Doc. No. 29-13). She ordered acetaminophen for Plaintiff's pain. (Doc. No. 29 at ¶ 12; Doc. No. 29-13).

On January 2, 2025, Plaintiff refused a sick call visit. (Doc. No. 29 at ¶ 13; Doc. No. 29-14).

On April 21, 2025, Plaintiff presented to Health Services requesting further evaluation of his right hand. (Doc. No. 29 at ¶ 14; Doc. No. 29-15). Rivers examined Plaintiff's right hand; she made no notes abuot the visit. (Doc. No. 29-15). Rivers consulted Defendant Bennett, who ordered acetaminophen. (Doc. No. 29 at ¶ 14; Doc. No. 29-15).

On April 25, 2025, Defendant Bennett ordered a 2-view follow-up x-ray of Plaintiff's right hand which revealed

> [s]crew fixation at the base of the 1st proximal phalanx. There appears to be a fracture at the anterior aspect of the base of the 5th middle phalanx acute or subacute. Carpal and metacarpal bone alignment is normal and the joint spaces are preserved. The adjacent soft tissues appear unremarkable.

(Doc. No. 29 at ¶ 15; Doc. No. 29-16).

Defendant Bennett saw Plaintiff on May 2, 2025, for a follow up visit. (Doc. No. 29 at ¶ 16; Doc. No. 29-18). Plaintiff denied pain. (Doc. No. 29 at ¶ 16; Doc. No. 29-18). Defendant Bennett acknowledged that the x-ray revealed a fracture to Plaintiff's "anterior aspect of the base of right 5th middle phalanx." (Doc. No. 29-18). She ordered splinting of the finger, a follow-up x-ray and one arm/hand duty restrictions. (Doc. No. 29 at ¶¶ 15, 16; Doc. No. 29-17; Doc. No. 29-18).

Donna M. Shipley, M.D., M.S., F.A.A.F.P., provided an affidavit in which she states that she reviewed Plaintiff's medical records following his October 23, 2024, right hand injury. (Doc. No. 29-2). Dr. Shipley was "asked to review the medical records of Jamie Hemphill to determine

if the care and treatment he was provided for a right hand injury following an October 23, 2024, incident was appropriate." (Id. at ¶ 3). Based on her review of the records, Dr. Shipley determined that Defendants Bennett and Kerstein evaluated Plaintiff appropriately by ordering an x-ray, pain medication, and ace bandage. (Id. at ¶ 4). Dr. Shipley further determined that "[b]ased on the results of the x-ray and [Plaintiff's] clinical presentation, it was appropriate to order wrapping of the hand with an ace bandage and naproxen and ibuprofen for pain management." (Id.). Additionally, Dr. Shipley found that Plaintiff's medications were appropriately adjusted to alleviate his pain. (Id. at ¶ 5). In short, according to Dr. Shipley, "the medical care and treatment provided to [Plaintiff] by APN Tracy Bennett and Dr. Gary Kerstein complaints of wrist pain [sic] was adequate and timely." (Id. at 6).

On May 8, 2025, Plaintiff was transferred to the Cummins Unit of the ADC (Doc. No. 29 at ¶ 17) and on June 16, 2025, Plaintiff filed this lawsuit. (Doc. No. 2).

**C. Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted).

"Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show she had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. Na'im v. Beck, 172 F.4th 1013, 1018 (8th Cir. 2026). This is an onerous burden. Christianson v. McLean Cnty., 176 F.4th 1076, 1083 (8th Cir. 2026). "Deliberate indifference is more than mere negligence or the ordinary lack of due care for a prisoner's safety." Hamilton v. Earl, 166 F.4th 1143, 1146 (8th Cir. 2026). Even gross negligence will not suffice to establish liability. Id. Instead, "the plaintiff must establish [that the defendant acted with] a mental state akin to criminal recklessness," Christianson v. McLean Cnty., 176 F.4th 1076, 1083 (8th Cir. 2026) (internal citations omitted), that "approaches actual intent." Hamilton v. Earl, 166 F.4th at 1146.

There is no evidence that Defendant Palmer had any personal involvement in Plaintiff's medical care. Nothing in the record indicates that Defendant Palmer was aware of Plaintiff's hand condition but ignored that condition.

Plaintiff's complaints of severe pain in his right hand began on October 23, 2024, and continued until at least April 21, 2025—six months. (Doc. No. 29-1; Doc. No. 29-15). Defendant Bennet was aware of Plaintiff's condition from the beginning. (Doc. No. 29-1 at 1). Despite the radiologist taking only a 1-view x-ray when Bennett initially ordered a 2-view x-ray and despite the radiologist noting "[s]tudy obscured by bandaging artifact. . . [f]racture not excluded. . . [c]orrellate with unobscured imaging," Defendant Bennett decided that no further treatment was necessary. (Doc. No. 29-5; Doc. No. 29-13).

Plaintiff's claims are based on a delay in treatment. Defendant Bennett waited six months to order a follow-up x-ray, all the time aware that Plaintiff's issues with his right hand, including pain, persisted. Ultimately, the follow-up x-ray revealed an acute or subacute fracture in Plaintiff's right 5th middle phalanx. The Court notes that Dr. Shipley's affidavit does not address Defendant Bennett's handling of the x-ray and six-month lag in ordering follow up radiology. Dantzler v. Baldwin, 133 F.4th 833, 847 (8th Cir. 2025) (delay in MRI for nonmedical reason where inmate complained for months of pain noted in medical records constituted violation). But the medical records do reveal that Defendant Bennett reviewed Plaintiff's first x-ray again on December 11, 2024, found that "there is no area that is obscured by bandaging. X-ray is very clear." (Doc. No. 29-13 at 1). There is evidence in the record that the delay was caused by Defendant Bennett's misunderstanding of the x-ray; a medical reason for the delay exists. Dantzler, 133 F.4th at 847. Considering the radiologist's clear notes, the Court finds Defendant Bennett's interpretation and course of treatment grossly negligent. The record of Plaintiff's medical treatment is disturbing. But even gross negligence is insufficient to establish liability; without more, no reasonable jury could conclude that Defendant Bennett acted with a state of mind that approaches actual intent.

There is no evidence in the record that Defendant Kerstein reviewed Plaintiff's x-ray results or otherwise knew of the radiologists comments when he saw Plaintiff or was consulted about Plaintiff's care, and Defendant Kerstein ordered pain medications when Plaintiff complained of pain. As such, no reasonable jury could conclude that Defendant Kerstein was deliberately indifferent to Plaintiff's serious medical needs.

Because Plaintiff has not met proof with proof to establish material facts in dispute making summary judgment against Defendants in their personal capacities inappropriate, Plaintiff's official capacity claims also fail.

**The Court reminds Plaintiff that he may file objections to this Recommendation.**

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 27) be GRANTED;
2. Plaintiff's claims against Defendants be DISMISSED with prejudice; and
3. This action be CLOSED.

Dated this 28th day of July, 2026.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE